**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHARON PENFIELD,**

                Plaintiff,              3:12-cv-630
                                                  (GLS)

                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | JOANNE JACKSON |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

---

[1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Sharon Penfield challenges the Commissioner of Social Security's denial of her claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g).[2]  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Penfield's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On October 29, 2008 Penfield filed an application for DIB under the Social Security Act ("the Act"), alleging disability since November 24, 2000. (*See* Tr.[3] at 55, 118-24.)  After her application was denied, (*see id.* at 56-61), Penfield requested a hearing before an Administrative Law Judge (ALJ), which was held on August 4, 2010, (*see id.* at 62, 29-54.)  On

---

[2] The Complaint also alleges that Penfield made a claim for Supplemental Security Income (SSI) benefits.  (*See* Compl. ¶ 1, Dkt. No. 1.)  Inasmuch as no application for SSI was apparently filed by Penfield, the court disregards that reference.

[3] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 8.)

September 3, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 7-23.)

Penfield commenced the present action by filing her Complaint on April 13, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 11, 12.)

### III. <u>Contentions</u>

Penfield contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 11 at 13-20.) Specifically, Penfield claims that the ALJ: (1) improperly assessed the medical opinions of record; and (2) erred in evaluating her credibility. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 12 at 4-13 .)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 11 at 4-13; Dkt. No. 12 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Medical Opinions

Penfield first contends that the ALJ erred in weighing the opinions of physicians John Buckner and Kamlesh Desai. (*See* Dkt. No. 11 at 13-17.) In particular, Penfield claims that the ALJ failed to evaluate the appropriate factors in weighing her treating physician's opinion and failed to consider the fact that her condition worsened after her one-time examination by Dr. Buckner. (*See id.*) The Commissioner argues, on the other hand, that the ALJ's determination regarding the weight afforded to the various medical

4

opinions is supported by substantial evidence[4] and, thus, his residual functional capacity (RFC)[5] determination—that Penfield could perform the full range of sedentary work[6]—must be affirmed. (*See* Dkt. No. 12 at 4-11.) The court agrees with the Commissioner.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length,

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

[6] "Sedentary work involves lifting no more than [ten] pounds at a time." 20 C.F.R. § 404.1567(a). In addition, the full range of sedentary work requires that an individual be able to stand and walk for a total of approximately two hours and remain in a seated position for approximately six hours in an eight-hour work day. *See* SSR 96-9p, 61 Fed. Reg. 34,478, 34,481-82 (July 2, 1996).

nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See id.* § 404.1527(c). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "[W]here the evidence of record permits [the court] to glean the rationale of an ALJ's decision," however, it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted). Similarly, if an ALJ omits express discussion of particular factors, his analysis may nevertheless be found legally sound if it is "clear from the record as a whole" that such factors were properly considered. *Id*.

Here, in March 2010, over four years after Penfield's date last insured, Dr. Desai—Penfield's treating orthopedic surgeon—completed a questionnaire and reported that Penfield suffered chronic lumbar syndrome and chronic cervical syndrome. (*See* Tr. at 271.) According to Dr. Desai, because of these impairments, in an eight-hour day, Penfield could sit for

6

less than six hours and would need a sit/stand option, could not stand for two hours, and could lift up to five pounds for three hours. (*See id.* at 270-71.) Further, Dr. Desai opined that Penfield had a moderate to severe limitation in her ability to concentrate, a severe limitation in her ability to sustain work pace, and it was "possible" that she would miss two to three days a month from work due to her impairments. (*Id.* at 269; *see id.* at 271.) Penfield argues that, in affording Dr. Desai's opinion "[l]ittle weight," the ALJ failed to consider his specialty and the length of his treating relationship as compared to that of Dr. Buckner, who only examined Penfield on one occasion, but whose opinion the ALJ afforded "[s]ignificant weight." (*Id.* at 18-19; *see* Dkt. No. 11 at 14-15.)

Here, it is evident that Dr. Desai's specialization as well as the nature and duration of his treatment relationship with Penfield were properly considered. In making his RFC determination, the ALJ specifically noted that Dr. Desai was Penfield's treating orthopedist and discussed his numerous treatment records, including those related to the period after Penfield's date last insured. (*See* Tr. at 16-18.) Moreover, as the opinion of Dr. Desai is inconsistent with other substantial evidence in the record, the ALJ properly declined to afford it controlling weight. *See Halloran*, 362

F.3d at 32. In particular, the objective evidence of record, including x-rays, MRIs, EMGs, a bone scan, discogram, and nerve conduction study are inconsistent with his restrictive opinion. (*See* Tr. at 170, 174, 178, 192, 219, 224, 226, 259, 264, 323, 326, 356, 358, 363, 380-82, 385-87.) The treatment notes and opinion of physicians Jeffrey Stillman, Robert Levine, and Saeed Bajwa were also inconsistent with his opinion. For instance, in January 2001, after examining her on more than one occasion, Dr. Stillman opined that Penfield could perform moderate to mild/light duty work for four hours a day, but should perform a sit down job, alternating between sitting and standing, for the remainder of the work day. (*See id.* at 417-20, 422-24.) Subsequently, in September 2001, Dr. Levine examined Penfield and opined that she could return to work as there were no objective findings that accounted for her alleged symptoms. (*See id.* at 394-95.) Thereafter, in September 2002, Dr. Bajwa—Penfield's treating neurosurgeon—opined that Penfield's ability to stand, walk, stoop, squat, bend, and use her right foot was moderately limited, but she suffered no sitting, fingering, reaching, or hand limitations and could push, pull, carry, and lift ten to twenty-five pounds. (*See id.* at 265-66.)

In June 2003, Dr. Buckner examined Penfield and noted that "[t]he

muscles of the lumbar spine demonstrate normal reciprocating function with gait and range of motion." (*Id.* at 336-40.) Straight leg raising, Lasegue's sign, McNabb's test, and the FABER maneuver were negative. (*See id.* at 338.) She had a reduced range of motion of the right hip and a positive Trendelenburg's sign on the right hip. (*See id.* at 338-39.) Based on this examination, Dr. Buckner opined that Penfield could work, but was precluded from prolonged walking and standing, and repetitive squatting or climbing. (*See id.* at 339.)[7]

Penfield argues that the ALJ erred in failing to consider the significant worsening of her symptoms since the time of Dr. Buckner's examination. (*See* Dkt. No. 11 at 15-16; Dkt. No. 14 at 3-4.) However, the lab results and clinical findings from June 2003 through Penfield's date last insured do not support Dr. Desai's restrictive opinion. For example, a February 2004 MRI of Penfield's lumbar spine was normal and a March 2004 x-ray of her cervical spine revealed no evidence of bony destruction,

---

[7] Dr. Buckner found that Penfield suffered a mild partial disability with respect to her left hip. (*See* Tr. at 339.) Penfield appears to argue that this finding undermines the ALJ's RFC determination. (*See* Dkt. No. 14, Attach. 1 at 1-3; Dkt. No. 12 at 6.) However, as the determination of disability is reserved for the Commissioner, and Dr. Buckner's opinion as to Penfield's functional limitations support the ALJ's conclusion that Penfield could perform the full range of sedentary work, this argument is without merit. (*See* Tr. at 339); 20 C.F.R. § 404.1527(d)(1).

minimal disc space narrowing, no osteophyte formation, and no subluxation. (*See* Tr. at 224, 286.) In March 2004, Penfield complained to Dr. Desai of cervical spine, left ear, and left shoulder pain, however, on examination tenderness was minimal, she had full range of motion, and the neurological exam of her upper extremities was satisfactory. (*See id.* at 286.) Further, in July 2004 Dr. Desai noted that Penfield's gait, gross neurological exam, and bilateral knee and ankle reflexes were satisfactory. (*See id.* at 222.) Dr. Desai also noted that Penfield's lumbar range of motion was limited and, therefore, advised that she avoid repetitive bending, lifting and twisting. (*See id.*) Thereafter, in May 2005, Dr. Desai noted a satisfactory gait, full weight-bearing on both lower extremities, no gross atrophy, and intact circulation. (*See id.* at 221.) At this time, Penfield's lumbar spine range of motion was restricted and painful, and straight leg raising produced "some discomfort in the area of the gluteal region." (*Id.*) Based on this examination, Dr. Desai recommended "conservative treatment" including the use of heating pads, ice packs, gentle stretching, proper posture, proper weight, and "intermittent use of medications." (*Id.*) Finally, in November 2005, Penfield complained of right shoulder pain to Dr. Desai whose examination revealed "tenderness

localized at the AC joint as well as at the greater tuberosity area." (*Id.* at 219.) Otherwise, Penfield's circulation, gross motor exam of the right upper extremity, and neck range of motion were satisfactory. (*See id.*) In addition, an x-ray of Penfield's right shoulder revealed no abnormalities. (*See id.*)

Based on the foregoing, the court discerns no error in the ALJ's assessment of the opinion evidence in the record, and concludes that the ALJ's RFC determination is supported by substantial evidence.

## B. Credibility Determination

Penfield also alleges that the ALJ erred in determining that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were not fully credible. (Tr. at 15; *see* Dkt. No. 11 at 17-20.) According to Penfield, the ALJ erred in discounting her testimony due to a perceived inconsistency between her attainment of a certificate in computer technology and allegations of constant pain and difficulty concentrating. (*See* Dkt. No. 11 at 19-20.) This argument is also unavailing.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce

11

the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

    Here, in finding that Penfield was not fully credible, the ALJ provided a thorough explanation of the objective medical evidence that belied her complaints. (*See* Tr. at 15-18.) The ALJ also considered Penfield's

12

symptoms as well as the types of medication and treatment prescribed. (*See id.*) Further, the ALJ considered the opinion evidence of record and Penfield's reported activities of daily living. (*See id.* at 18-19.) As the ALJ noted, Penfield testified that, without the use of medication, she was unable to concentrate due to pain, but that the use of medication caused her to sleep and made her unable to function. (*See id.* at 18, 42-45.) According to Penfield, due to the side effects it caused, she stopped taking pain medication in the beginning of 2005. (*See id.* at 42-43, 45.) However, Penfield also testified that she took four-hour computer office technology classes, three days a week, in 2002 and 2003. (*See id.* at 50-51.) Although Penfield testified that her symptoms worsened since the time she attended classes, (*see id.* at 51), the ALJ properly considered her ability to attend classes, along with the other evidence of record, in making his credibility determination, (*see id.* at 18).

In sum, the ALJ's credibility determination was sufficiently articulate and based on substantial evidence and is, therefore, conclusive.

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

13

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Penfield's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

April 16, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court